UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VP ELECTRIC, INC. | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-00453(JCH) |
| v. | : | |
| | : | |
| GRAPHIC ARTS MUTUAL | : | |
| INSURANCE COMPANY, | : | AUGUST 30, 2013 |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 16)**

**I.     INTRODUCTION**

Plaintiff VP Electric, Inc. ("VP Electric") brings this suit against defendant Graphic Arts Mutual Insurance Company ("Graphic") for breach of an insurance contract and violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, et seq.  Pending before the court is Graphic's Motion for Summary Judgment (Doc. No. 16).

**II.    STATEMENT OF FACTS[1]**

VP Electric had a Commercial Package Policy with Graphic, effective from December 21, 2007 to December 21, 2008, that included a Commercial Inland Marine Coverage Part, Policy CPP 4093143.  Def.'s L.R. 56(a)(1) Stat. ¶ 1.  The policy stated that, "[n]o one may bring a legal action against [Graphic] under this Coverage Part [the Commercial Inland Marine Conditions] unless "there has been full compliance with all terms of this Coverage Part; and [t]he action is brought within 2 years after you first

---

[1] VP Electric has not filed a Local Rule 56(a)(2) Statement.  Therefore, the factual assertions made by Graphic in its Local Rule 56(a)(1) Statement are deemed admitted to the extent they are supported by the evidence.   Local Rule ("L.R.") 56(a)(1) ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2.").

1

have knowledge of the direct loss or damage." Def.'s Mem. in Supp. Mot. Summ. J., Ex. 2, Commercial Inland Marine Conditions at 2 (Legal Action Against Us, Section C, General Conditions).

On or about May 2008, VP suffered a loss when certain cooper wire was purportedly delivered to a VP Electric jobsite at Pratt & Whitney in East Hartford, Connecticut, by Electric Wholesalers, Inc. Def.'s L.R. 56(a)(1) Stat. ¶ 2. Victor Pietrandrea ("Pietrandrea"), VP Electric's Principal, knew of the loss by June 2008.[2] Id. at ¶ 3. Pietrandrea disputed the invoice for wire delivery, claiming that VP Electric never ordered the wire and never received the wire. Pietrandrea Aff. ¶ 4. He also considered the possibility that the wire was stolen. Def.'s L.R. 56(a)(1) Stat. ¶ 3.

According to VP Electric, Peitrandrea informed his insurance agent, Ed Kubasek ("Kubasek") of the Kerry Agency, of the disputed wire delivery in May 2008. Pietrandrea Aff. ¶ 5; see also Pietrandrea Dep. at 12:3-8, 13:1-5 (stating that he learned of the missing wire in May 2008, that Kubasek was with him when he received the phone call, and that he "started bouncing things off Ed Kubasek" and told him of the "potential problem"). According to VP Electric, he told Kubasek that it was possible the wire was missing or stolen. Id. Kubasek denies that Pietrandrea told him the wire had been stolen. Kubasek Dep. at 51:4-6.

---

[2] Pietrandrea states in his Affidavit that he informed Kubasek of the disputed wire delivery in the summer of 2010. Pietrandrea Aff. ¶ 5. Graphic states in its Reply that the dates are incorrect and Pietrandrea must have meant the summer of 2008. Def.'s Reply at 1. The court believes Pietrandrea must have meant 2008, as he stated in his deposition that he learned of the missing wire between the middle of May to the middle of June in 2008 and that Kubasek was in the office with him when he learned of the missing wire. Pietrandrea Dep. at 12:3-8; 14:18-19. Further, Pietrandrea states the date on which Electric Wholesalers initiated its lawsuit against VP Electric, Pietrandrea Aff. ¶ 7 (stating Electric Wholesalers initiated the suit in October 2010); but see L.R. 56(a)(1) ¶ 4 (stating Electric Wholesalers initiated the action on December 2, 2008, and the trial was held on May 5, 2010, suggesting the dates in Pietrandrea's Affidavit are incorrect).

Pietrandrea testified that, after telling Kubasek "there could be a potential problem," Kubasek responded, "no problem . . . notifying me is like notifying the agency because I am the agent of record." Pietrandrea Dep. at 26:5-11. Kubasek testified that he considered the dispute to be "a hassle with the supply company" and did not believe it justified the triggering of a claim. Kubasek Dep. at 36:18-23. Further, he did not believe that Pietrandrea was telling him about the dispute in order to submit a claim, but rather, was discussing peripheral issues related to his business. Id. at 36:24-25; 37:1-9. According to VP Electric, Kubasek never advised Peitrandrea to submit a claim to Graphic or that he could have insurance coverage for the missing wire delivery. Pietrandrea Aff. ¶ 6.

Electric Wholesalers initiated a civil lawsuit against VP Electric by complaint returnable on December 2, 2008. Def.'s L.R. 56(a)(1) Stat. ¶ 4. The lawsuit sought to collect from VP Electric the payment for the copper wire. Id. Pietrandrea testified that he promptly informed Kubasek of the institution of the lawsuit and faxed him copies of the serving papers. Pietrandrea Aff. ¶ 8; Pietrandrea Dep. 29: 22-25; 30:1-4. According to VP Electric, Kubasek did not advise Pietrandrea to submit a claim to Graphic and told him to pursue the defense of the action with his own attorney and to keep him updated on the status of the lawsuit. Pietrandrea Aff. ¶ 11. Pietrandrea testified that Kubasek "was pretty specific" that he should have his own lawyers handle the matter. Pietrandrea Dep. at 30:22-4. However, Kubasek testified that he did not advise Pietrandrea as to whether or not to turn over defense of the lawsuit to Graphic. Kubasek Dep. at 67:4-16. Kubasek testified that he did not inform Graphic of the lawsuit because he interpreted the dispute to be a "business hassle between the

3

contractor and the supply house" because Peitrandrea said he never ordered the wire and never received the wire. Id. at 50:10-17. According to Kubasek, had the wire been stolen, he would have submitted a claim to the insurance carrier immediately. Kubasek Dep. at 51:7-11.

Peitrandrea was not aware that, under his policy, the insurance company may have undertaken his defense, and he did not tell Kubasek that he wanted Graphic to provide a defense. Pietrandrea Dep. at 30:12-22. VP Electric, therefore, defended the lawsuit without any assistance from Graphic. Pietrandrea Aff. ¶ 13.

A trial in the case was held on or about May 5, 2010, after which the Superior Court rendered judgment against VP Electric in the amount of $51,284.75 and awarded attorney's fees and costs in the amount fo $50,047.77. Def.'s L.R. 56(a)(1) Stat. ¶ 5. Pietrandrea immediately notified Kubasek of the judgment. Pietrandrea Aff. ¶ 15; see also Kubasek Dep. at 43:18-23 (stating that the claim came in, or Pietrandrea contacted Kubasek about the claim, on July 22, 2010). Kubasek submitted a claim for coverage of stolen property to Graphic, which Graphic denied. Pietrandrea Aff. ¶ 16. VP Electric initiated the instant action through service on the Insurance Commissioner for the State of Connecticut on February 27, 2012. Def.'s L.R. 56(a)(1) Stat. ¶ 6.

### III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to

any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

**IV. DISCUSSION**

Graphic argues that it is entitled to summary judgment on VP Electric's claims that it breached its insurance policy—by failing to cover the loss of the copper wire and failing to defend the suit brought by Electric Wholesalers—because VP Electric's claims are time-barred pursuant to the insurance policy. Graphic also argues that VP Electric's

5

claim for violation of CUIPA is subject to summary judgment because there is no private right of action pursuant to CUIPA.

   A. <u>Breach of Contract for Underlying Loss</u>

Graphic argues that, because the Commercial Inland Marine policy states that, as a condition to bringing suit under that Coverage Part, VP Electric must bring the action within two years of gaining knowledge of the direct loss or damage, VP Electric's claim is time-barred. Def.'s Mem. in Supp. Mot. Summ. J. at 7. The undisputed facts are that VP Electric learned of the dispute with Electric Wholesalers around June 2008, but did not file suit against Graphic until February 27, 2012. Def.'s L.R. 56(a)(1) Stat. ¶¶ 3, 6.

"The Connecticut Supreme Court has long held that a contractual condition in an insurance policy requiring an action to be brought with a particular time period 'is a part of the contract ... [and] is valid and binding upon the parties.'" <u>Craig v. Colonial Penn. Ins. Co.</u>, 335 F.Supp.2d 296, 302 (D. Conn. 2004) (quoting <u>Chichester v. New Hampshire Fire Ins. Co.</u>, 74 Conn. 510 (1902)). Failure to abide by the time-to-file provision is a complete defense unless the plaintiff "alleges facts sufficient in law to excuse his nonperformance of the condition." <u>Id.</u>

VP Electric makes two arguments in response. First, it argues that it filed suit within the two year time limitation because it only learned of the direct loss or damage once the Superior Court entered judgment against it on May 5, 2010. Pl.'s Mem. in Opp. Mot. Summ. J. (Doc. No. 17) at 7. According to VP Electric, only after the court found that VP Electric was liable for the copper wire did it become aware that the wire was stolen (as that was the only explanation for how it disappeared if VP Electric, in

6

fact, received the delivery).  Id.  Second, VP Electric argues that, even if it filed suit outside the contractual limitation, Graphic "is estopped from raising the two year contractual limitation in the insurance policy to bring claims due to the conduct of its authorized agent, Ed Kubasek."  Id. at 4.  According to VP Electric, it did not submit a claim or file suit against Graphic earlier because Kubasek advised Pietrandrea that the copper wire was not a covered loss.  Id. at 6.

    1.  When VP Electric Became Aware of Loss

According to VP Electric, its insurance policy provides that Graphic will pay for loss to Covered Property from any of the Covered Causes of Loss.[3]  Pl.'s Mem. in Opp. Mot. Summ. J. at 7.  VP Electric claims that the policy defines covered property to include "property which has been delivered to a job site while awaiting and during installation."  Id.  VP Electric argues that it only knew that the copper wire was "covered property" subject to a theft—a possible covered cause of loss—upon the judgment of the Superior Court in the underlying action with Electric Wholesalers.  Id.  Therefore, according to VP Electric, it filed suit against Graphic within two years of gaining knowledge of the direct loss or damage.  Id.

The problem with VP Electric's argument is that Pietrandrea stated that he informed Kubasek that the copper wire was possibly missing or stolen prior to the

---

[3] The court assumes that VP Electric is referencing the "Installation Floater Coverage Form," in which the policy states that, "[w]e will pay for 'loss' to Covered Property from any of the Covered Causes of Loss."  Def.'s Mem. in Supp., Ex. 2, Installation Floater Coverage Form at 1.  However, because VP Electric merely quoted an alleged provision, without citing to any specific provision within the 203-page insurance policy, the court cannot be sure to what section VP Electric was referring.

initiation of the lawsuit.[4]  Pietrandrea Aff. ¶ 5.  Further, Pietrandrea said during his deposition that he received a call about the copper wire from Electric Wholesalers in mid-May to mid-June 2008, Pietrandrea Dep. at 12:3-8; 14:18-19, and that he met with a representative from Electric Wholesalers immediately after the call.  Id. at 15:16-23.  During that meeting, they discussed "[t]he wire order, the delivery that he's claiming was delivered, and the amount," id. at 16:3-4, and Peitrandrea's position at the meeting was "[i]f the delivery got made, we don't have it.  And if it got taken off the truck and put in the vicinity anywhere, it could have got stolen," id. at 16:5-9.

Based on this evidence, no reasonable jury could conclude that VP Electric only learned about the loss as a result of theft once the state court entered judgment against it.  Based on Pietrandrea's testimony, VP Electric considered the possibility that the copper wire was stolen when it was first informed about the disputed delivery in 2008.  Therefore, no reasonable jury could conclude that VP Electric filed suit against Graphic within two years of gaining knowledge of the direct loss or damage, in accordance with the insurance policy.

   2. Estoppel

VP Electric argues that, even if it filed its lawsuit against Graphic outside the two year contractual limitations period, it is "justifiably excused from complying with the contractual provision . . . based on its reliance on the advice of an agent of the

---

[4] As previously mentioned, Pietrandrea states that he informed Kubasek of the disputed wire delivery, including the possibility that it was missing or stolen, in the summer of 2010, see supra, n. 2.  Pietrandrea must have meant the summer of 2008.  The Affidavit makes clear that Pietrandrea informed Kubasek about the possibility that the wire was missing or stolen before Electric Wholesalers initiated its state action (and, therefore, before judgment was entered against VP Electric).  See Peitrandrea Aff. ¶¶ 5-6 (stating he informed Kubasek of the loss in the summer of 2010, and Electric Wholesalers initiated the lawsuit in October 2010).  As Electric Wholesalers initiated suit in 2008, Peitrandrea must have meant he informed Kubasek of the disputed wire delivery in the summer of 2008.

8

Defendant." Pl.'s Mem. in Opp. Mot. Summ. J. at 6. "[A]ny claim of estoppel is predicated on two essential elements: the party against whom estoppels is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." Middlesex Mutual Insurance Co. v. Walsh, 218 Conn. 681, 699 (1991). "For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury." Bland v. Bregman, 123 Conn. 61, 65 (1937). Furthermore, "it is the burden of the person claiming estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." Boyce v. Allstate Ins. Co., 236 Conn. 375, 385-86 (1996).

According to VP Electric, Kubasek[5] never advised Peitrandrea to submit a claim to Graphic or that he could have insurance coverage for the missing wire delivery. Pietrandrea Aff. ¶ 6. However, he told Pietrandrea that notifying him of the "problem" with Electric Wholesalers was "like notifying the agency." Pietrandrea Dep. at 26:5-11. Such comments, taken in a light most favorable to plaintiff, could allow a reasonable jury to determine that Kubasek informed Pietrandrea that he need not take any further action to file a claim. Furthermore, according to VP Electric, Kubasek also told Pietrandrea to have his own lawyers handle the suit brought by Electric Wholesalers, id.

---

[5] Graphic agrees that Kubasek was its agent. See Def.'s Reply at 2 (stating that "the VP Electric principal, Victor Pietrandrea and the Defendant's agent, Ed Kubasek, had discussion in or about May of 2008 . . ."); see also Pitts v. Carabillo, 2000 WL 739680, at *3 (Conn. Super. Ct. May 22, 2000) (stating that an insurance agent is typically an agent of the insurer).

9

at 30:22-4, even though, at least according to VP Electric, Pietrandrea told Kubasek that the copper wire was possibly stolen, Pietrandrea Aff. ¶ 5. A reasonable jury could find that, by telling Pietrandrea to assume responsibility for his own defense, Kubasek suggested to Pietrandrea that he had no right to submit a claim for the copper wire, even though it may have been stolen. Taken all of these facts together, in a light most favorable to plaintiff, the court concludes that a reasonable jury could find that VP Electric is entitled to estoppel on Count One.

However, even were the court to find that there are insufficient facts to allow a reasonable jury to conclude that Kubasek, through his words and conduct, <u>affirmatively</u> misled Pietrandrea, the court still concludes that a reasonable could find that VP Electric is entitled to estoppel. To the extent that VP Electric is claiming that Kubasek's omission—by not advising Pietrandrea to file a claim—entitles VP Electric to estoppel, the court notes that estoppel may be appropriate if a party acts with "such gross negligence on his part . . . [that it] amounts to constructive fraud." <u>Id.</u>

> "'In a case where . . . silence is the conduct relied upon to give rise to the estoppel, the existence of circumstances which impose a duty upon the one claimed to be estopped to disclose the fact which is known is essential. . . But there is no duty to speak where the facts are equally within the knowledge of both parties or where the one claiming the estoppel, though he has not in fact equal knowledge, has convenient and available means of acquiring it. . . It is, moreover, necessary that the silence be such as would naturally mislead the other party . . . and that the party claiming the estoppel has been or will be subjected to loss unless he can have the advantage of it, and there is no presumption in his favor.'"

<u>State v. American News Co.</u>, 152 Conn. 101, 113 (1964).

The parties dispute whether Peitrandrea told Kubasek that the copper wire may have been stolen; therefore, there is a dispute of fact which could allow a reasonable jury to determine that Kubasek was grossly negligent in failing to file a claim on VP

10

Electric's behalf.  Further, although Graphic argues that Pietrandrea had the means to determine whether the missing or stolen copper wire was covered by the insurance policy—because he had access to the insurance policy—the court believes a reasonable jury could conclude that Pietrandrea was not in a position to determine whether the loss was covered.  The insurance policy is 203 pages, with various forms setting forth different types of coverage.  A reasonable jury could conclude that, even had Pietrandrea scrutinized the policy, he still would not have been able to decipher whether or not he had a claim.  See Bouchard v. Travelers Indem. Co., 28 Conn. Supp. 122, 126 (Conn. Super. Ct. 1969) ("Even if the policyholder had scrutinized the policy in the instant case, he would have found it far from a model of ingenuous exposition."). Therefore, Graphic's Motion for Summary Judgment as to Count One is denied.

The court recognizes that Graphic claims VP Electric is not entitled to estoppel—or to any relief in this action—because "the 'theft' in this instance is not a covered cause of loss under the appropriate policy provisions for items outside the insured premises." Def.'s Reply at 2.  That may be the case, but without any briefing on the application of the insurance policy, the court cannot conclude whether the missing or stolen copper wire is a covered loss under the policy.  Therefore, the court directs Graphic, if it wishes to brief this argument, to file a Motion for Summary Judgment on this issue within 21 days of the filing of this Ruling.

### B.  Breach of Contract for Failing to Defend

Graphic argues that VP Electric is similarly time-barred from bringing an action against it for failure to defend.  Def.'s Mem. in Supp. Mot. Summ. J. at 8.  The Commercial Inland Marine Conditions policy states that Graphic "may elect to defend

you against suits arising from claims of owners of property. We will do this at our expense." Id., Ex. 2, Commercial Inland Marine Conditions at 1 (Loss Payment, Section E(4)). Legal action brought against Graphic under the Commercial Inland Marine Conditions Coverage Part must be brought within two years of knowledge of the direct loss or damage. Id., Ex. 2, Commercial Inland Marine Conditions at 2 (Legal Action Against Us, Section C, General Conditions). Because Electric Wholesalers filed suit against VP Electric on December 2, 2008, Def.'s L.R. 56(a)(1) Stat. ¶ 4, VP Electric had until December 2, 2010, to bring an action against Graphic for failure to defend.

As with Count One, VP Electric argues that it is entitled to estoppel based on Kubasek's conduct: in this case, giving improper advice with regard to Graphic's defense of the action pursuant to the insurance policy.

"[A]n insurer's duty to defend [is] much broader in scope and application than its duty to indemnify . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage." Nationwide Mut. Ins. Co. v. Mortensen, 222 F.Supp.2d 173, 180-81 (D. Conn. 2002). Neither party has attached to its briefings the state complaint filed by Electric Wholesalers; therefore, the court cannot conclude whether the state complaint alleged facts which would bring the injury within the coverage. The state court described the dispute as one over a debt pursuant to a credit agreement between Electric Wholesalers and VP Electric. Electric Wholesalers, Inc. v. VP Electric, Inc., 2010 WL 2365529, at *1 (Conn. Super. Ct. May 6, 2010). However, the complaint could have had broader allegations.

With regard to this Count, on the record before the court, the court concludes that there are disputes of fact which preclude summary judgment. Although Kubasek denies it, Pietrandrea testified that he informed Kubasek about the lawsuit, sent him the complaint, and that Kubasek "was pretty specific" that Pietrandrea should have his own lawyers handle the matter. Pietrandrea Dep. at 30:22-4. If Pietrandrea's claims are true, they could allow a reasonably jury to determine that Kubasek's statements were "calculated or intended to induce" Pietrandrea to believe that he could not request Graphic's assistance in defending against the Electric Wholesaler's lawsuit. Middlesex, 218 Conn. at 699. Although Graphic argues that, even if that were the case, VP Electric has not established that it exercised due diligence to ascertain the truth, Def.'s Reply at 2, a reasonable jury could find that Pietrandrea's efforts to discuss the litigation— including representation—with Kubasek is sufficient to establish due diligence. See Boyce v. Allstate Ins. Co., 236 Conn. 375, 387 (1996) (stating that, "under the circumstances, due diligence at least required that the plaintiff make an inquiry of the defendant before assuming that the defendant did not intend to enforce the terms of its policy"). Therefore, Graphic's Motion for Summary Judgment is denied as to Count Two.

### C. CUIPA

Courts have repeatedly held that no private right of action exists under CUIPA. In Lander v. Hartford Life & Annuity Insurance Co., 251 F.3d 101 (2d. Cir.2001), the court held that "[m]ost federal and Connecticut state courts have determined that the Connecticut Unfair Insurance Practices Act ... does not provide a private cause of action." Id. at 118–19. Furthermore, "[t]he Connecticut Supreme Court characterized

CUIPA as a penal statute requiring a construction 'limiting rather than expanding civil liability'—further supporting the proposition that no private cause of action is available under the statute." Glynn v. Bankers Life and Casualty Co., 297 F.Supp.2d 424, 431 (D.Conn.2003).

In accordance with the Lander and Glynn courts, this court holds that VP Electric has no private right of action under CUIPA. To the extent that VP Electric seeks to bring its CUIPA claim through CUTPA, such a claim requires proof of multiple acts. See L.A. Limousine, Inc. v. Liberty Mut. Ins. Co., 509 F.Supp.2d 176, 182-83 (D. Conn. 2007) ("Absent any showing that Liberty Mutual employed alleged unfair settlement practices outside the singular insurance policy subject to this dispute, LA Limo's CIUPA through CUTPA claims . . . must be dismissed."). VP Electric has failed to come forward with any such evidence.

Therefore, Graphic's Motion for Summary Judgment is granted as to Count Three.

**V.    CONCLUSION**

For the foregoing reasons, Graphic's Motion for Summary Judgment is **DENIED** as to Counts One and Two and **GRANTED** as to Count Three. Graphic has 21 days from the date of this Ruling to bring a Motion for Summary Judgment based on its argument that the loss is not covered by the insurance policy.

**SO ORDERED**.

Dated at New Haven, Connecticut, on this 30th day of August, 2013.

                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge